UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RITA BOHN,

     Plaintiff,

 - against -

MICHAEL F. BARTELS, COMPANHIA
DE SEGUROS MUNDIAL CONFIANCA,
S.A. and COMPANHIA DE SEGUROS
FIDELIDADE MUNDIAL, S.A.,

     Defendants.

**OPINION AND ORDER**

06 Civ. 1390(PKL)

**APPEARANCES**

WILLIAM WATERMAN, JR., ATTORNEY AT LAW
William Waterman, Jr., Esq.
305 Broadway, 7th Floor
New York, NY 10007

Attorney for Plaintiff


COZEN O'CONNOR
Jed M. Weiss, Esq.
45 Broadway Atrium, Suite 1600
New York, NY 10006

Attorney for Defendants

**LEISURE, District Judge:**

   Defendants, Michael F. Bartels ("Bartels"), Companhia
de Seguros Mundial Confianca, S.A. ("Mundial Confianca"),
and Companhia de Seguros Fidelidade Mundial ("Fidelidade")
(collectively "defendants"), move this Court to dismiss the
Complaint filed against them by plaintiff Rita Bohn
("Bohn").[1]  Fidelidade seeks dismissal pursuant to Rule
12(b)(2) of the Federal Rules of Civil Procedure on the
basis that this Court lacks personal jurisdiction over it
and pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure for failure to state a cause of action.  In
addition, all defendants seek dismissal pursuant to the
doctrine of *forum non conveniens*, as well as dismissal
based on the pendency of an action in Portugal.  For the
following reasons, defendants' motion is GRANTED.

**BACKGROUND**

   This action arises out of an accident that occurred on
March 2, 2003 at the Lajes Air Force Base, Terceira Island,
Azores, Portugal.[2] (Complaint ¶ 4.)  At approximately 11:00
p.m. on March 2, 2003, Bohn was crossing a street at the

---

[1] Bohn brings claims against Bartels and his insurer, Companhia de
Seguros Mundial Confianca, S.A., and its legal successor, Companhia de
Fidelidade Mundial, S.A.  Hereinafter the Court will refer to the
insurers collectively as "Fidelidade."

[2] The Azores are a group of islands that form an autonomous region of
Portugal located in the Atlantic Ocean approximately 900 miles west of
Lisbon, Portugal, and over 2,000 miles east of the United States.

Lajes Air Force Base when she was struck by a vehicle being driven by Bartels, a member of the United States Air Force stationed at Lajes Air Force Base. (Complaint ¶ 5.) At the time of the accident, Bohn -- a teacher employed by the United States Department of Defense in a school for United States military children on the Lajes Air Force Base -- was accompanied by her two daughters, Ashley and Meredith, and one of her students, Nicole Snead. (Bohn Decl. ¶¶ 2-5.) Fidelidade, a Portuguese insurance company with its principal place of business in Lisbon, Portugal, had issued an automobile liability policy that covered Bartels from July 25, 2002 until July 24, 2003. (Figueiredo Aff. ¶¶ 2-5.)

Some time after the March 2, 2003 accident, both Bohn and Bartels left Portugal. Bohn moved to Japan, where she was stationed with the United States Department of Defense. (Bohn Decl. ¶ 1.) Bartels moved to New York and became a student at the State University of New York in Oneonta. (Complaint ¶ 3; Pl.'s Opp. at 5.)

Bohn filed two lawsuits related to this accident. On February 23, 2006, Bohn filed suit against Fidelidade and Bartels in the Court of the Judicial District of Vila da Praia da Vitoria in Portugal. (Weiss Decl. Ex. C.) Fidelidade has filed a response in the Portuguese action.

2

(Weiss Decl. Ex. D.)  Based on the information currently

before this Court, Bartels has not yet responded.

In addition, Bohn filed a Complaint in this Court

against defendants on February 21, 2006 claiming that

Bartels was negligent at the time of the accident.

(Complaint ¶ 6.)  After receiving two extensions of time to

answer or move, defendants filed this motion to dismiss on

June 5, 2006.  Bohn filed her Opposition on July 31, 2006.

Defendants replied and the case was fully submitted on

August 14, 2006.

## DISCUSSION

Defendants seek dismissal of the claims against them

on several grounds.  Fidelidade seeks dismissal pursuant to

Rule 12(b)(2) of the Federal Rules of Civil Procedure on

the basis that this Court lacks personal jurisdiction over

it and pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a cause of action.  In

addition, all defendants seek dismissal pursuant to the

doctrine of *forum non conveniens* as well as dismissal due

to the pendency of the parallel action in Portugal.

I. Personal Jurisdiction Over Fidelidade

a. Rule 12(b)(2)

Fidelidade asserts that all claims against it must be

dismissed under Rule 12(b)(2) of the Federal Rules of Civil

Procedure because Bohn cannot meet its burden of establishing that this Court has personal jurisdiction over it. (Def.'s Mot. at 5.) When considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Metro. Life, 84 F.3d at 566. Ultimately, personal jurisdiction must be proven by a preponderance of the evidence, either at an evidentiary hearing or at trial. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). "But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." Id.; see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

A district court sitting in diversity applies the forum state's law to determine whether it has personal jurisdiction over a defendant. See Geller Media Mgmt., Inc.

4

v. Beaudreault, 910 F. Supp. 135, 137 (S.D.N.Y. 1996)
(Leisure, J.) (citing Fed. R. Civ. P. 4(k)(1)(A)). If the
forum state's law allows the exercise of personal
jurisdiction, then the Court must determine whether doing
so comports with due process guarantees of the United
States Constitution. See Metro. Life, 84 F.3d at 567
(quoting Arrowsmith v. United Press Int'l, 320 F.2d 219,
223 (2d Cir. 1963) (en banc)). Thus, to determine whether
the Court has personal jurisdiction over Fidelidade, it
must engage in a two-part inquiry. First, the Court must
determine whether there is personal jurisdiction over
Fidelidade under New York state law. Second, if New York
law provides for personal jurisdiction, the Court must
determine whether the assertion of jurisdiction comports
with the constitutional requirements of due process. Id.;
see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316
(1945).

b. Personal Jurisdiction Under New York Law

A court may exercise two types of jurisdiction over a
defendant:  general and specific. See Helicopteros
Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984).
New York law provides for both general and specific
personal jurisdiction. See N.Y. C.P.L.R. §§ 301-302
(McKinney 2001).  In the case of general jurisdiction,

plaintiff's claim need not arise out of defendant's contacts with the forum state, but defendant's contacts must be substantial. Id. § 301. For specific jurisdiction, defendant's contacts need not be as substantial, but plaintiff's claim must arise out of those contacts. Id. § 302. In this case, Bohn concedes that the Court may not exercise general personal jurisdiction over Fidelidade. (Pl.'s Opp. at 14.) Bohn asserts that the Court may exercise specific personal jurisdiction pursuant to section 302(a)(1) of the New York Civil Practice Law and Rules. (Pl.'s Opp. at 14.)

Section 302(a)(1) allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). With the addition of the "contracts anywhere" provision,[3] New York courts may "exercise jurisdiction over a nondomiciliary who contracts outside this State to supply goods or services in New York even if the goods are never shipped or the services are never supplied in New York, so long as the cause of action . . . arose out of that contract." Sirius Am. Ins. Co. v.

---

[3] The "contracts anywhere" provision was added in amendments made to the statute in 1979. See Sirius Am. Ins. Co. v. SCPIE Indem. Co., 461 F. Supp. 2d 155, 161 (S.D.N.Y. 2006)(citing 1979 Report of N.Y. Law Revision Comm., McKinney's Sessions Laws of N.Y., 1450-53).

SCPIE Indem. Co., 461 F. Supp. 2d 155, 161 (S.D.N.Y. 2006)(citing 1979 Report of N.Y. Law Revision Comm., McKinney's Sessions Laws of N.Y., 1450-53).

Bohn does not dispute Fidelidade's contention that it does not transact any business within New York. (Pl.'s Opp. at 14.)  Rather, Bohn asserts that Fidelidade is amenable to suit under the "contracts anywhere" clause of section 302(a)(1). (Pl.'s Opp. at 14-15.)  Citing the large number of Americans stationed at the Air Force base and the large percentage of those with cars, Bohn states that "it would be reasonable for Fidelidade to expect that in the event of an accident involving defendant Bartels, particularly an accident involving one of the many other Americans on the base and in the base community, he might well be sued in the United States, namely the state of his domicile." (Pl.'s Opp. at 15.)  Thus, Bohn argues that by issuing a policy to a domiciliary of New York, Fidelidade was contracting to supply services in New York. (Pl.'s Opp. at 15.)

Bohn concedes that she has found no case law holding a foreign insurer who does not do business in New York subject to jurisdiction by reason of an obligation to defend the insured in New York. (Pl.'s Opp. at 15.) Instead, Bohn supports her position by analogizing the

7

instant case to those permitting jurisdiction over an out-of-state party giving a guarantee payable in New York.[4] (Pl.'s Opp. at 15-16.) The line of cases cited by Bohn, however, involves a promise specifically directed towards New York. See, e.g., A.I. Trade Fin., Inc., 989 F.2d at 82 (stating that payment in New York was not "an incidental or fortuitous aspect of the transaction" where making the guarantee payable in New York was critical to the success of the transaction); Reilly Co. v. Lisa B., Inc., 181 A.D.2d 269, 586 N.Y.S.2d 668 (3d Dep't 1992)(holding that nondomiciliary's guarantee of New York corporation's debt was sufficient for long-arm jurisdiction where the promise "enabled [the New York corporation] to engage in business activities in New York"). Fidelidade made no such promise. When Fidelidade issued the insurance policy to Bartels, he was residing in Portugal, (Figueiredo Aff. ¶ 3), and New York was in no way a consideration, let alone an important element of the contract. Similarly, the accident occurred in Portugal. (Figueiredo Aff. ¶ 6). New York was not a factor until Bohn filed her claims here. Fidelidade cannot be said to have made a promise specifically to perform services in New York. Thus, Bohn has offered no convincing

---

[4] Plaintiff admits that there is disagreement among courts in New York as to whether such a guarantee confers personal jurisdiction. (Pl.'s Opp. at 16-17.)

8

evidence to support the conclusion that Fidelidade availed itself of the privilege of conducting activities in New York.

A defendant who "contracts anywhere to supply goods or services in the state" is subject to personal jurisdiction under section 302(a)(1) "in any action arising from the . . . contracting to supply goods and services in New York." See Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983). Even if the Court determined that Fidelidade falls into the "contracts anywhere" provision -- which it has not -- there is not a sufficient nexus between Fidelidade's contacts and Bohn's cause of action to support jurisdiction. Bohn's cause of action does not arise out of any conduct in New York, including those contacts that Bohn attributes to Fidelidade, such as Bartels's domicile and Fidelidade's obligation to defend Bartels. Rather, as the Complaint states, "[t]his is an action for personal injuries arising out of an accident in which an automobile owned and drive[n] by defendant Bartels struck the plaintiff, as a pedestrian, on March 2, 2003 at Lajes Air Base, Terceira Island, Azores, Portugal." (Complaint ¶ 4.) Fidelidade is implicated in the action because of an insurance policy it issued in Portugal to an individual residing in Portugal. The Second Circuit has stated that,

9

under New York law, "a court must look to the totality of circumstances concerning the party's connection to the state" in making the personal jurisdiction determination. See Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000). Considering the totality of the circumstances, jurisdiction is not proper over Fidelidade -- a Portuguese company with no connection to New York -- in this action arising out of activities in Portugal.

The Court need not evaluate jurisdiction under due process guarantees of the United States Constitution because Bohn has failed to show that Fidelidade is subject to jurisdiction under New York law. However, the Court notes that jurisdiction also cannot be supported under such a consideration. The Court may exercise personal jurisdiction over a party only if there exists between the party and the forum state "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotation marks omitted). In determining whether minimum contacts exist, a court looks to "'the relationship among the defendant, the forum, and the litigation.'" Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). There must be "some

act by which the defendant purposefully avails itself of
the privilege of conducting activities within the forum
State, thus invoking the benefits and protections of its
laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "This
'purposeful availment' requirement ensures that a defendant
will not be haled into a jurisdiction solely as a result of
'random,' 'fortuitous,' or 'attenuated' contacts." Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)

Fidelidade cannot be said to have purposefully availed
itself of conducting activities in New York. In no way did
Fidelidade purposefully direct its efforts towards New
York. Any contacts in this case are solely as a result of
"random," "fortuitous," or "attenuated" contacts. That
Bartels, who was living in Portugal at the time that the
insurance policy was issued, happens to be a domiciliary of
New York is more appropriately characterized as a
fortuitous contact and is insufficient to support
jurisdiction over Fidelidade. Fidelidade does not conduct
business in New York and it is apparent that New York was
not contemplated by Fidelidade in issuing an insurance
policy to Bartels. Thus, asserting personal jurisdiction
over Fidelidade would not comport with the requirement of
due process.

Construing all allegations in the light most favorable to Bohn and resolving all doubts in Bohn's favor, Bohn has failed to meet her burden of showing that the Court has jurisdiction over Fidelidade. Therefore, Fidelidade's motion to dismiss the Complaint filed against it pursuant to Rule 12(b)(2) is GRANTED.[5]

## II. *Forum Non Conveniens*

Having dismissed the Complaint as to Fidelidade, Bartels is the only remaining defendant in this action. Bartels seeks dismissal pursuant to the doctrine of *forum non conveniens*.

### a. *Forum Non Conveniens* Dismissal Standards

The doctrine of *forum non conveniens* is based on the principle that "'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)); In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984, 634 F. Supp. 842, 845 (S.D.N.Y. 1986) (Keenan, J.) ("The doctrine of *forum non conveniens* allows a court to decline jurisdiction, even

---

[5] In light of the foregoing, the Court need not consider Fidelidade's motion pursuant to Rule 12(b)(6) for failure to state a cause of action as that argument does not pertain to the only remaining defendant, Bartels.

when jurisdiction is authorized by a general venue
statute."), aff'd, 809 F.2d 195 (2d Cir. 1987).
Notwithstanding the propriety of the action under the venue
statute, "dismissal will ordinarily be appropriate where
trial in the plaintiff's chosen forum imposes a heavy
burden on the defendant or the court, and where the
plaintiff is unable to offer any specific reasons of
convenience supporting his choice." Piper Aircraft Co. v.
Reyno, 454 U.S. 235, 249 (1981). The Supreme Court has
declined to fashion the exact circumstances that would
"'justify or require either grant or denial of remedy.'"
Id. (quoting Gilbert, 330 U.S. at 508). Consequently, a
district court's inquiry is highly fact-specific. Id.
("'Each case turns on its facts.'")(quoting Williams v.
Green Bay & W.R. Co., 326 U.S. 549, 557 (1946)); Walpex
Trading Co. v. Yacimientos Petroliferos Fiscales Bolivanos,
712 F. Supp. 383, 392-93 (S.D.N.Y. 1989) (Leisure, J.)
("The Supreme Court has emphasized the flexibility with
which the District Court must approach a *forum non
conveniens* determination, and consequently there are no
specific circumstances which would require either a grant
or denial of the remedy.").

13

In furtherance of these general principles of law, the
Second Circuit has crafted a three-step inquiry for its
district courts to follow:

> At step one, a court determines the degree of
> deference properly accorded the plaintiff's
> choice of forum. At step two, it considers
> whether the alternative forum proposed by the
> defendants is adequate to adjudicate the parties'
> dispute. Finally, at step three, a court
> balances the private and public interests
> implicated in the choice of forum.

Norex, 416 F.3d at 153 (citing Iragorri v. United Techs.
Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)). A
defendant moving for dismissal on *forum non conveniens*
grounds bears the burden of proof. Aguinda v. Texaco, Inc.,
303 F.3d 470, 476 (2d Cir. 2002); see also VictoriaTea.com,
Inc. v. Cott Beverages Canada, 239 F. Supp. 2d 377, 381
(S.D.N.Y. 2003). Analysis of each of these three steps
follows.

b. The Degree of Deference Due the Plaintiff

Under Supreme Court and Second Circuit precedent, a
court should defer to a plaintiff's choice of forum.
Iragorri, 274 F.3d at 70; see also Piper, 454 U.S. at 255
("[T]here is ordinarily a strong presumption in favor of
the plaintiff's choice of forum."); Gilbert, 330 U.S. at
508 ("[U]nless the balance is strongly in favor of the
defendant, the plaintiff's choice of forum should rarely be

14

disturbed."). However, such deference is "not dispositive, and it may be overcome." Iragorri, 274 F.3d at 71. It is important to note that "the reason we give deference to a plaintiff's choice of her home forum is because it is presumed to be convenient." Id. (citing Piper, 454 U.S. at 255-56). Therefore, where it becomes apparent that plaintiff's choice of forum was not made with regard to convenience, and instead was made for "forum-shopping reasons," it is acceptable to afford plaintiff's choice less deference. Id.

Under this general approach, a district court's determination of "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." Id. Specifically, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens." Id. at 71-72 (footnotes omitted). The factors favoring denial of a motion for dismissal include

> the convenience of the plaintiff's residence in
> relation to the chosen forum, the availability of
> witnesses or evidence to the forum district, the

15

> defendant's amenability to suit in the forum
> district, the availability of appropriate legal
> assistance, and other reasons relating to
> convenience or expense.

Id. at 72. Conversely, where it appears that a plaintiff

has chosen a United States forum because of forum-shopping

reasons, less deference will be afforded plaintiff's choice

and, consequently, the greater the likelihood of dismissal.

Id. Such forum-shopping reasons include

> attempts to win a tactical advantage resulting
> from local laws that favor the plaintiff's case,
> the habitual generosity of juries in the United
> States or in the forum district, the plaintiff's
> popularity or the defendant's unpopularity in the
> region, or the inconvenience and expense to the
> defendant resulting from litigation in that
> forum.

Id.; see, e.g., Pollux Holding Ltd. v. Chase Manhattan

Bank, 329 F.3d 64, 71 (2d Cir. 2003) ("In such

circumstances, it is more likely that forum-shopping for a

higher damage award or for some other litigation advantage

was the motivation for plaintiff's selection.").

Bartels brings this motion for dismissal claiming that

Bohn's "choice of forum does not tip the balancing factors

against dismissal." (Def.'s Mot. at 12.) In support of his

motion, Bartels claims that the facts have no connection to

New York because Bohn is a resident of Texas living in

Japan and the accident at issue occurred in Portugal.

(Def.'s Mot. at 12.)

16

Bohn responds that her choice of forum should be given "a high degree of deference" because she has chosen her "home forum." (Pl.'s Opp. at 3-4.) Although Bohn is a domiciliary of Texas and not New York, she asserts that because the alternative forum is outside the United States, "'the "home forum" for plaintiff is any federal district in the United States, not the particular district where the plaintiff lives.'" (Pl.'s Opp. at 3 (quoting Reid-Walen v. Hansen, 933 F.2d 1390, 1394 (8th Cir. 1991)).) Bohn further notes that she had an appropriate reason for bringing the action in this Court, specifically that Bartels is domiciled here and subject to jurisdiction here. (Pl.'s Opp. at 4.)

Bohn has a bona fide connection to the United States and is correct in her assertion that as a United States citizen her "home forum" is a United States court. See Guidi v. Intercontinental Hotels Corp., 224 F.3d 142, 146 (2d Cir. 2000). By suing in her home forum, Bohn's choice is generally entitled to great deference, Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947), because it is presumed to be convenient. See Piper Aircraft, 454 U.S. at 255-56. Leaving her home district to sue in a district that Bartels has established himself further indicates that Bohn's choice was not "motivated by desire

17

to impose tactical disadvantage on the defendant."
Iragorri, 274 F.3d at 73.

The amount of deference the Court should grant to
Bohn's chosen forum is diminished by additional
considerations. See Iragorri, 274 F.3d at 74 (stating that
although a "plaintiff's citizenship and residence can serve
as a proxy for, or indication of, convenience, neither the
plaintiff's citizenship nor residence, nor the degree of
deference given to her choice of forum, necessarily
controls the outcome"). First, Second Circuit case law
indicates that Bohn, as a United States citizen living
abroad, might not be granted the same deference as the
Court would grant to a plaintiff residing in this forum.[6]
Second, although Bohn and Bartels each have a bona fide
connection to the United States, the lawsuit's connection
is significantly weaker. See, e.g., Kirch v. Liberty Media
Corp., No. 4 Civ. 667, 2006 U.S. Dist. LEXIS 82175, at *4,

[6] "Significantly, we suggested that the selection of a U.S. forum by a
U.S. citizen living abroad would be entitled to less deference than the
choice of the same forum by a citizen residing in the forum because
with respect to the expatriate U.S. citizen 'it would be less
reasonable to assume the choice of forum is based on convenience.'"
Pollux Holding Ltd., 329 F.3d at 73 (quoting Iragorri, 274 F.3d at 73
n.5). At the time that this motion was filed, Bohn was a United States
citizen living abroad and did not reside in her chosen forum.
Relatedly, the Court will not defer to a plaintiff's choice of forum
where that plaintiff "falls back on its United States citizenship as
the sole and only possible basis for suing these defendants in a court
of the United States." Ionescu v. E.F. Hutton & Co. (France) S.A., 465
F. Supp. 139, 146 (S.D.N.Y. 1976) (Pollack, J.) (quoting Mizokami Bros.
of Arizona, Inc. v. Baychem Corp., 556 F.2d 975, 977 (9th Cir. 1977)
(per curiam)).

18

2006 WL 3247363, at *4 (S.D.N.Y Nov. 8, 2006)

("[P]laintiff's choice of this forum is not to be afforded great deference, in light of the inherently German nature of this dispute."). Further, consideration of those factors that the Iragorri Court identified as indicating that a plaintiff's choice is made out of convenience also dictates that Bohn's choice is not entitled to a high degree of deference. Iragorri, 274 F.3d at 72. As discussed below in connection with the private interest factors, some evidence and witnesses may not be available in this forum. In addition, although Bartels is amenable to suit in this forum, Bohn is unable to maintain claims against all defendants in this Court because the Court lacks personal jurisdiction over Fidelidade. In Portugal, however, the action already is progressing against all defendants.[7]

Considering all of the factors, Bohn's choice of forum is afforded some deference because it is supported by

_____

[7] Although Bohn asserts that the Southern District of New York is her preferred forum, in part because it is more convenient than the alternative forum of Portugal, this argument is diminished by the fact that Bohn filed claims in the Portuguese court within days of filing here. Bohn contends that "the Portuguese action was brought to assure that plaintiff's direct right against the insurer was preserved even if the New York court did not sustain jurisdiction over the insurer." (Waterman Aff. ¶ 8(b).) Her stated motivations for filing in Portugal are irrelevant to this consideration, however, because, as Bartels notes in his Reply Memorandum, (Def.'s Reply Memo. at 5), filing in Portugal, whatever the motivation, makes clear that Portugal also is a forum chosen by Bohn.

19

legitimate reasons of convenience and she is considered to be suing in her home forum. Deference to Bohn's choice is diminished, however, in light of the factors discussed above. Thus, on the "sliding scale" of deference, id. at 71, the Court grants some deference to Bohn's choice, but will not afford the "high degree" of deference that Bohn seeks.

## c. Adequacy of an Alternative Forum

The second step in this analysis involves considerations related to selection of an alternate forum. A complaint is not properly dismissed under the doctrine of *forum non conveniens* unless a suitable alternate forum for the dispute exists. Iragorri, 274 F.3d at 73; see Piper, 454 U.S. at 254 n.22. The movant bears the burden of demonstrating that an adequate alternative forum exists. Bank of Credit and Commerce Int'l (OVER$EAS) Ltd. v. State Bank of Pak., 273 F.3d 241, 248 (2d Cir. 2001). "'An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'" Norex, 416 F.3d at 157 (quoting Pollux Holding Ltd., 329 F.3d at 75).

Bartels contends that the courts of Portugal present an adequate alternative forum and that this case should be

20

tried there.  Bohn does not contest this, and she has an
action pending against the same parties for the same claims
in the Court of Vila Praia da Vitoria on Terceira Island,
Azores, Portugal.  Therefore, the Court is satisfied that
an alternative forum exists in Portugal.

### d. Private and Public Interest Factors

Once a court has determined the degree of deference
due a plaintiff's choice of forum and satisfied itself that
an alternate forum exists, it must weigh two sets of
factors to determine whether adjudication is more
appropriate in the present forum or the alternative forum.
See Pollux, 329 F.3d at 75.  The first set of factors
concerns the private interests of the litigants. See
Iragorri, 274 F.3d at 73.  In considering these factors,
the district court weighs the hardships the defendant will
face if jurisdiction is retained in the present forum
against the hardships plaintiff will face if the motion to
dismiss is granted. Pollux, 329 F.3d at 75.  The court must
also weigh the public interest factors of justice and court
efficiency. Alcoa Steamship Co. v. M/V Nordic Regent, 654
F.2d 147, 151 (2d Cir. 1978) (en banc).  In short, "[t]he
action should be dismissed only if the chosen forum is
shown to be genuinely inconvenient and the selected forum
significantly preferable." Iragorri, 274 F.3d at 74-75.

21

## i. Private Interest Factors

The private interest factors address the convenience to the litigants. These factors include

"the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

Iragorri, 274 F.3d at 73-74 (quoting Gilbert, 330 U.S. at 508). While analyzing these factors, a district court weighs the difficulties a defendant would suffer if the dispute were adjudicated in the present forum against the difficulties a plaintiff would face if the case were dismissed and the plaintiff were thus forced to bring suit in an alternate forum. See id. at 74.

Regardless of where this case is tried, it likely will be inconvenient and costly for those involved. This is not a situation where the majority of witnesses are in one location; potential witnesses in this case are scattered across the globe. When this motion was filed, Bohn was living in Japan and Bartels was living in New York. It appears, however, that with these parties in particular, their residency is subject to change -- Bohn as an employee of the United States Department of Defense and Bartels as a

22

member of the National Guard. (Def.'s Mot. at 14 n.3; Pl.'s Opp. at 1.) Bohn expects to call witnesses who reside in Texas, with potential experts coming from locations unknown at this time. (Pl.'s Opp. at 5.) In the Portuguese action, Fidelidade lists residents of Portugal as expected witnesses.[8] (Weiss Decl. Ex. D.) Given the isolated nature of the Azores as compared to the numerous transportation options to New York, Bohn properly notes that travel to New York likely would be less costly than travel to the court in Portugal, for all witnesses except those already residing in Portugal.[9] Further, Bohn notes that obtaining expert witnesses to testify in Portugal may be substantially more costly and difficult than retaining experts to testify here. (Pl.'s Opp. at 5.) Thus, the cost of obtaining the attendance of willing witnesses weighs in favor of retaining the action here.[10]

_____

[8] The two witnesses listed in Fidelidade's response to the Portuguese action and cited in defendants' motion papers are Artur Miguel and Antonio Nogueira. Because defendants' papers were submitted collectively, they do not make clear whether these witnesses are expected to be called by Bartels or are now irrelevant in light of the Court's decision regarding personal jurisdiction over Fidelidade. However, Mr. Miguel apparently is a Portuguese police officer who signed the accident report and therefore, it is likely that Bartels would call him as a witness. (Weiss Decl. Ex. D.) It is unclear who Mr. Nogueira is and what he would testify about.

[9] However, the costs of litigating in the Azores clearly are not prohibitive because Bohn is already proceeding with an action there.

[10] Bartels contends that "a substantial number of witnesses and documents[] are located in Portugal and certainly outside of the United States and New York." (Def.'s Mot. at 13.) Regarding documents, as

23

Compulsory process is unavailable in this forum for attendance of most, if not all, unwilling witnesses in this matter. This matter may be tried without the live trial testimony of the unwilling witnesses. There also are alternatives to live testimony. Although there is a preference in this Circuit for live trial testimony, the Second Circuit has "recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient." See DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002)(citing Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt, 684 F.2d 232, 235 (2d Cir. 1982) (noting that "any difficulties . . . regarding witnesses whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory")). Thus, while the Court's inability to compel the attendance of witnesses who reside in Portugal weighs in favor of dismissal, this likely would apply to a limited number of witnesses and none who appear to be of paramount importance.

---

this is a personal injury action, it is unlikely to be a document-intensive case and presumably documents could be transported fairly easily to either court. Thus, this is a neutral factor. Regarding witnesses, defendants have named only two witnesses who reside in Portugal. In addition, representatives of Fidelidade are no longer relevant to this action in light of the Court's decision above. Regarding the witnesses listed by Bohn, as discussed above, Bohn reasonably puts forth that travel to New York would be less costly than travel to the Azores, for those outside of Portugal.

24

A viewing of the premises where the accident occurred may be necessary, which weighs in favor of dismissal. As Bartels contests liability, (Def.'s Mot. at 13), a viewing of the premises may prove important at trial. Bohn asserts that she has photographs of the premises taken shortly after the accident and that the lapse in time since the accident occurred may render a viewing of the premises inconsequential. (Pl.'s Opp. at 7.) Although it would be premature to make a final determination on this issue, the Court recognizes that photographs may not be a sufficient replacement for an actual viewing of the premises. Given the nature of the action, it is reasonable to assert that a viewing of the premises "would be appropriate to the action." Iragorri, 274 F.3d at 73-74 (quoting Gilbert, 330 U.S. at 508). Obviously, it would be extremely costly, if not prohibitively so, to have a viewing of the premises were the case tried here.

The Court also must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. Translation of documents and testimony may be necessary regardless of where the case is tried because although the parties are native speakers of English, some witnesses may not be and documents may be in both English and Portuguese. See Ocean Shelf Trading Inc.

v. Flota Mercante Grancolombiana S.A., 638 F. Supp. 249, 252 (S.D.N.Y. 1986)("Although the costs of translation do not alone constitute sufficient grounds for dismissal, it is a factor in deciding whether to dismiss.")(internal citations omitted). Another practical consideration is raised in light of this Court's decision that it lacks personal jurisdiction over Fidelidade. Specifically, it would be more practical and less expensive to try one case against all defendants in Portugal as opposed to proceeding with parallel actions in New York and Portugal.[11]

## ii. Public Interest Factors

The Court now turns to those considerations of the *forum non conveniens* inquiry that protect the public's interest. These factors include (1) the consideration that jurors should not be obligated to decide disputes with no relation to their community; (2) the fact that where a case affects many people, a forum that allows those affected to view the suit, rather than learn of it by report from a

---

[11] Bohn also submits that time is a factor weighing in favor of retaining the action here because, she asserts, the action could be resolved more quickly in this Court than it would be in Portugal. In support of this contention, Bohn cites the declaration of her attorney in the Portuguese action, João Caniço Gomes, who advises that resolution in the Portuguese courts would take between three and five years, without consideration of time to appeal. (Pl.'s Opp. at 8.) However, Bohn's suggestion that trial in this Court could occur in February 2007 is plainly off-base in light of the date of this Opinion. Further, a determination of the time to resolve the case here or in Portugal would be speculative. Nonetheless, the Court notes that potential delay of resolution of the action is a practical consideration that may weigh in favor of retaining the action here.

foreign forum, is preferable; (3) the forum's local interest in having its own controversies decided at home; and (4) the potential pitfalls that stem from a diversity case being heard in a foreign forum that must resolve conflicts of law and substantive law problems, rather than a forum familiar with the state law to be applied to the case.[12] Gilbert, 330 U.S. at 508-09; Iragorri, 274 F.3d at 74.

As previously noted, although the parties are United States citizens, this case is at heart a Portuguese one. Consideration of the public interest factors reflects this and therefore weighs heavily in favor of dismissal. The accident occurred in Portugal and the parties were residing in Portugal at the time of the accident.[13] The interest of Portugal in resolving this dispute is far greater than the plausible interest that New York has in connection with a personal injury action arising out of an accident that occurred in a foreign country between two people who were

---

[12] Gilbert also specifies administrative difficulties resulting from court congestion as a public factor consideration. Gilbert, 330 U.S. at 508-09. This consideration is not presently applicable in this District, however. Cf. Guidi, 224 F.3d at 147 (noting that "the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this concern of little or no present significance").

[13] While the fact that both of the parties were in service to the U.S. Government at the time of the accident lends the action more of a connection to the United States then it otherwise might have, (Pl.'s Opp. at 13), this forum's connection to the action remains tenuous.

27

not New York residents. Despite Bohn's assertion to the contrary, this is indeed a "localized controversy." (Pl.'s Opp. at 10.) Regardless of where the parties moved after the accident occurred, the controversy itself is local to Portugal as it was a personal injury accident that occurred in Portugal between two residents of Portugal. The action implicates such local concerns as traffic laws and standards under negligence law. (Weiss Decl. Ex. C at 6.) New York jurors have little connection to this dispute, the only one being that Bartels is a domiciliary. However, Bartels did not reside here when the accident giving rise to this action occurred and it is apparent that his residency is subject to change. In addition, through her employment, Bohn "sought out involvement with a foreign forum," as opposed to the foreign forum being forced upon her. See DiRienzo, 294 F.3d at 32.

To the extent this case touches on the affairs of other people, those people are in Portugal, not New York. Although the claims against Fidelidade have been dismissed here, as the insurer of Bartels, Fidelidade still may be affected by the outcome of this action. Indeed, Fidelidade remains a party to the parallel action that is progressing in Portugal. Additionally, although the existence of related litigation in another forum is not a specific

28

factor to be considered under the *forum non conveniens*
analysis, see Guidi, 224 F.3d at 148, the possible
duplication of effort by another court hearing the same
claims involving the same parties is a matter of public
interest because it likely imposes an unnecessary burden on
this Court and on New York jurors.[14]

With the claims against Fidelidade being dismissed,
the parties' discussion regarding whether Portuguese law
applies to Bohn's direct action against Fidelidade is
irrelevant. (Pl.'s Opp. at 13.) Consideration of what law
would apply to Bohn's claims against Bartels remains. At
this stage, a definitive determination of what law would
apply is unnecessary and premature, except to note that it
likely would be a significant issue for the Court's

---

[14] Bohn notes that an additional public interest factor for the Court to
consider is the interest

> in providing a U.S. forum for an action in which the
> principal parties are U.S. citizens and domiciliaries, and
> an enhanced public interest in providing a U.S. forum for
> such parties when the matter leading to the action occurred
> when both principal parties were abroad in service to the
> United States Government, and occurred on an airbase at
> which a large number of U.S. service men and women and
> civilian employees of the Defense Department were
> stationed.

(Pl.'s Opp. at 13.)  In response, Bartels points out that "there is 'no
rigid rule of decision protecting [a] U.S. citizen or resident
plaintiff from dismissal for *forum non conveniens*.'" (Def.'s Mot. at 15
(quoting Realuyo v. Abrille, No. 01 Civ. 10158, 2003 U.S. Dist. LEXIS
at *44, 2003 WL 21537754, at *14  (S.D.N.Y. July 8, 2003)).)  Although
Bartels's and Bohn's service to their country is admirable, Bohn does
not provide any support for the notion that individuals in service to
the U.S. Government ought to be treated differently in this
consideration.

29

consideration. See Peregrine Myanmar v. Segal, 89 F.3d 41, 47 (2d Cir. 1996)(stating that the mere need to "untangle problems in conflict of laws" is part of the Court's consideration in evaluating the public interest factors). Bartels properly notes that the fact that both New York and Portuguese law account for negligence does not mean that a conflict does not exist. (Def.'s Reply Memo. at 6.) Additionally, a review of the papers submitted in the Portuguese action makes clear that local traffic laws are relevant to this action. (Weiss Decl. Ex. C-D.) Under New York's "interest analysis," which would be used to determine which jurisdiction's law applies, see Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 50 (2d Cir. 2005) (quoting Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521, 644 N.E.2d 1001, 1002 (1994)), Portugal likely has a greater interest in the litigation because the accident occurred in Portugal between two residents of Portugal. Where the laws in question regulate conduct, as is the case here, courts in New York usually will apply the law of the place of the tort, see Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999), which in this case would be Portugal. Thus, the public interest

30

factors overwhelmingly favor dismissal of this case in favor of the already-pending action in Portugal.

In sum, the Court grants some deference to Bohn's choice of forum, however, as discussed above, that deference is limited by several factors. Although some private interest factors weigh in support of retaining the action, the private interest factors provide support for both parties' positions. Given that there is an adequate alternative forum and that public interest factors weigh heavily in favor of dismissal, even granting deference to Bohn's choice of forum, the Court holds that the overall analysis strongly supports dismissal and that trial in the Portugal courts is "significantly preferable." Iragorri, 274 F.3d at 74-75. Therefore, Bartels's motion to dismiss pursuant to the doctrine of *forum non conveniens* is GRANTED, subject to defendants[15] submitting themselves to jurisdiction in Portugal for any action arising out of the acts alleged in the Complaint.[16]

---

[15] As noted above, Fidelidade has already filed a response in the Portuguese action. Based on the information currently before the Court, Bartels has not yet appeared in that action. This Court's decision is made on the condition that Bartels submits to jurisdiction in the Portuguese action.

[16] In light of the Court's decision regarding personal jurisdiction and *forum non conveniens*, the Court need not consider defendants' motion seeking dismissal of the claims due to the pendency of the Portuguese action.

31

## CONCLUSION

For the reasons set forth herein, Fidelidade's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is hereby GRANTED. Bartels' motion to dismiss pursuant to the doctrine of *forum non conveniens* is hereby GRANTED, subject to defendants submitting themselves to jurisdiction in Portugal for any action arising out of the acts alleged in the Complaint. Therefore, this action is hereby DISMISSED.

**SO ORDERED.**

**New York, New York**

December **11**, 2007

U.S.D.J.